**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

EVELINE MCCOMBS, individually, and on behalf of all others similarly situated,

Plaintiff,

vs.

DELTA GROUP ELECTRONICS, INC,

Defendant.

**Case No. 1:22-cv-00662-WJ-KK**

**CLASS ACTION**

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUES TO BE DECIDED ..... 2

III. STATEMENT OF FACTS ..... 2

IV. LEGAL STANDARD ..... 3

V. ARGUMENT ..... 4

A. Plaintiff Has Standing ..... 4

B. Plaintiff Adequately Alleges Each of her Causes of Action ..... 7

1. Plaintiff Adequately Alleges Negligence ..... 7

2. Plaintiff Adequately Alleges Breach of Contract ..... 9

3. Plaintiff Adequately Alleges Breach of the Implied Covenant of Good Faith and Fair Dealing ..... 10

4. Plaintiff Adequately Alleges Unjust Enrichment ..... 10

C. In The Alternative, Amendment Is Warranted ..... 11

V. CONCLUSION ..... 11

## I. INTRODUCTION

The factual underpinning of this case is a data breach in which the full names, driver's license numbers, financial account numbers and Social Security numbers of thousands of individuals were accessed by cybercriminals over a period of approximately three days (i.e., November 2, 2021 through November 5, 2021). Despite knowledge of the breach, Defendant did not notify victims until June 17, 2022. Precisely how this attack occurred, why victims were not notified expeditiously, and what information was accessed are questions only Defendant has the information to answer. All the victims could and would know (e.g., from the breach notices sent them, use of their information vis-à-vis its publication on the dark web) is that their sensitive and private information was accessed by profit-driven cybercriminals.

Despite this, Defendant's motion seeks the summary dismissal of all the countless victims' claims before a single document is produced, an interrogatory propounded, or the like. Indeed, despite a well-pled 27-page First Amended Complaint, Defendant claims Plaintiff has not and cannot establish Article III Standing or alleged facts sufficient to sustain her causes of action. But, if Defendant's arguments accurately reflect the state of the law in its aggregate, virtually no one could ever bring a successful data breach lawsuit again—at least until some victim learned to navigate the dark web and unearth related criminal activity or learned elsewhere that her identity was replicated and misused—in other words, after it was too late to do anything about it.

Plaintiff disagrees the policies articulated in Defendant's motion are supportable and rejects the applicability of its legal authorities. As further explained below, the Complaint contains more than enough facts for each claim for relief under the lenient pleading standard in Rule 8. Finally, to the extent the Court believes more information is necessary to make Standing clear, Plaintiff respectfully seeks leave to cure any defects or augment the pleadings.

## II. STATEMENT OF ISSUES TO BE DECIDED

1) Standing: Has Plaintiff alleged facts sufficient to confer Article III Standing?
2) Negligence: Does the Complaint establish a legal duty sufficient to support a Negligence claim? Does Plaintiff allege an injury proximately caused by the breach?
3) Breach of Implied Contract: Has Plaintiff adequately alleged breach of implied contract?
4) Breach of the Covenant of Good Faith and Fair Dealing: Has Plaintiff adequately alleged breach of the implied covenant of good faith and fair dealing?
5) Unjust Enrichment: Has Plaintiff properly alleged that Defendant was unjustly enriched at her expense?

## III. STATEMENT OF FACTS

Plaintiff alleges that she and thousands of others are victims of the above-detailed data breach, through which an unauthorized third party accessed information including Plaintiff's first and last name, Social Security number, driver's license number, and financial account numbers. First Amended Complaint ¶¶ 1, 33. According to Defendant, the activity was detected as early as November 5, 2021, although it did not report this to Plaintiff until it sent her a letter dated June 17, 2022. First Amended Complaint ¶¶ 4, 19.

As a result of the breach, Plaintiff's and Class Members' PII and financial information was disclosed to an unauthorized third party—a criminal undoubtedly seeking to profit from it. First Amended Complaint ¶ 8. As cyber criminals don't work for free, it can be presumed (and it is alleged) that the ones who infiltrated Defendant's network did so with the *intent* of misusing and/or financially profiting from the information obtained therefrom. First Amended Complaint ¶ 8.

As victims of the data breach, Representative Plaintiff and Class Members have suffered, without limitation:

> (i) actual identity theft; (ii) the loss of the opportunity of how their PII and financial information is used; (iii) the compromise, publication, and/or theft of their PII and financial information; (iv) out-of-pocket expenses associated with the prevention,

> detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and financial information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (vi) the continued risk to their PII and financial information, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Representative Plaintiff's and Class Members' PII and financial information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and financial information compromised as a result of the Data Breach.

First Amended Complaint ¶ 95.

As a result, Representative Plaintiff filed this putative class action lawsuit on September 9, 2022, seeking damages, injunctive, and equitable relief to redress the injuries she and fellow victims suffered in connection with the breach. Representative Plaintiff filed a First Amended Complaint on December 9, 2022. Defendant filed the present motion, which Plaintiff now opposes.

## IV. LEGAL STANDARD

Federal authority does not support the draconian pleading standard suggested by Defendant. Indeed, Fed. R. Civ. P. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. Rule 8(a)(2). The purpose of the rule is simply "to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007). This standard does not require "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The spirit of these authorities is obvious: it is to draw out the "who, what, where, why, and how" of the factual predicate such that a defendant may file an Answer, put the matter at issue, and get on with litigation. It is not meant to impose unnecessary barriers upon a plaintiff by compelling guesswork or pleading of facts normally developed through the discovery process.

What's more, in ruling on a motion to dismiss, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citations omitted); *See also, Western*

*Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1154 (9th Cir. 2000) ("[W]e consider only the facts alleged in the complaint and in any documents appended thereto.").

While not the case here, a Complaint may proceed "even if it strikes a savvy judge that actual proof of the facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 556 U.S. at 556. Because of this, motions to dismiss for failure to state a claim are ***viewed with disfavor and rarely granted***. *Walsh v. McGee*, 918 F.Supp. 107 (S.D.N.Y. 1996). Indeed, the Court must find that the plaintiff can prove *no set of facts* in support of their claim that would entitle them to the relief requested. *Heffernan v. Pacific Dunlop GNB Corp.*, 767 F.Supp. 913 (N.D. Ill. 1991) (emphasis added); *See also, LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1156 (9th Cir. 2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) ("A plaintiff needs only to plead general factual allegations of injury in order to survive a motion to dismiss…."). While a difficult burden for a defendant to overcome as it is, the factual allegations in Plaintiff's Complaint rise far above this low bar.

## V. <u>ARGUMENT</u>

Plaintiff alleges facts sufficient to establish Article III Standing since (1) the Complaint, generally, alleges several distinct forms of concrete, particularized harm, and (2) Plaintiff alleges facts sufficient to establish each claim for relief. While Rule 8 requires only a short plain statement setting out the claims, Plaintiff offers a robust 27-page Complaint which more than provides this.

### A. Plaintiff Has Standing

Article III Standing consists of three elements: (1) an injury in fact, (2) [an injury] that is fairly traceable to the challenged conduct of the defendant, and (3) [an injury] that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

To establish an injury in fact, a plaintiff must show "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). An injury is "particularized if

it affects the plaintiff in "a personal and individual way." *Id*. An injury must also be concrete. This requires the injury be "real" and not "abstract." *Spokeo*, 136 S. Ct. at 1548. But an injury can be "concrete" even if it is *intangible*. *Id*. In determining whether an intangible harm constitutes injury for purposes of Article III Standing, courts should look to "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id* at 1549 (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U. S. 765, 775-777).

The first and most obvious injury alleged in the First Amended Complaint is the impending risk of identity theft and related harms Plaintiff faces in connection with the data breach. While the Tenth Circuit has little case law directly addressing this issue, several of its sister Circuits with more robust case law have found standing based on similar facts to those Plaintiff alleges here. For example, in *Krottner v. Starbucks*, a thief stole a laptop containing sensitive information belonging to thousands of Starbucks employees. *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1140 (9th Cir. 2010). The Ninth Circuit determined the increased risk of future identity theft caused by the potential exposure of this information was sufficient for Article III Standing. *Id* at 1143; *See also In re Zappos.com, Inc.*, 108 F. Supp. 3d 949 (D. Nev. 2015) (affirming that *Krottner* was still good law following the Supreme Court's decision in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). Given the information here, which included full names, drivers' license numbers, financial account numbers, and Social Security numbers, Plaintiff surely faces (and has pled) embarrassment, lost time in investigating the breach, monitoring of her accounts, and a heightened risk of future harm for identify theft or other acts of fraud.

While Defendant may argue the Tenth Circuit has adopted the approach of other courts which have rejected this argument, the few Tenth Circuit cases on point have denied doing so. Indeed, the few cases that have addressed whether the impending threat of misuse constitutes an injury for purposes of Article III Standing have attempted to reconcile this apparent circuit split with an analysis that disclaims the split's existence. *C.C. v. Med-Data Inc.* LEXIS 60555; 2022 WL 970862, 10-12. Instead, the Tenth Circuit has developed an analysis that considers whether

there was a *misuse* of the data disseminated through the breach. When there is a misuse, there is an injury in fact. *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d, 985 (W.D. Okla., 2021), 993-94.

Here, Plaintiff has alleged actual misuse in the form of both a heightened level of spam calls, texts, and emails following the data breach and several unauthorized attempts to access her bank, which forced her to close that account and open an entirely new one. First Amended Complaint ¶¶ 98-100. Defendant's argument that there is a causation problem with this allegation is wholly unavailing at this stage of the case because Plaintiff is entitled to draw ***all reasonable inferences in her favor*** for purposes of a Motion to Dismiss. *Coons*, 410 F.3d at 1039. It's surely reasonable to infer a connection between cybercriminals acquiring Plaintiff's personal information—including financial account information—and subsequent attempts to gain access to her bank account.

Even setting aside the impending threat of identity theft which Plaintiff alleges Defendant has subjected her to, Plaintiff has alleged other forms of cognizable injury. Take what is, perhaps, the most benign of Plaintiff's damages: lost time, and we can see a concrete, particularized harm. And it is already well-established that lost time is a cognizable injury for standing purposes. *Bass v. Facebook, Inc.*, 394 F.Supp.3d 1024, 1035 (N.D. Cal. 2019) (quoting *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018); *Stasi v. Inmediata Health Grp. Corp.*, 501 F.Supp.3d 898, 912 (S.D. Cal. 2020); *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021). In order to sidestep this clearly established rule, and despite the fact that Defendant warned victims to take action (e.g., get credit monitoring, be diligent about the effects of the breach), Defendant now pivots and argues that Plaintiff's lost time is self-inflicted and cannot create Standing. This argument lacks all merit.

First, Defendant *encouraged* Plaintiff to take the same action it now claims was unnecessary. It told her to be watchful, indeed, to take steps to mitigate her potential *future* damages. The letter Plaintiff received provides "[w]e encourage you to remain vigilant by regularly reviewing your credit reports and financial account statements for any unauthorized activity." It further provides information about how to place fraud alerts on your credit report, request credit reports, and utilize a credit or security freeze. Of course, this mitigation takes time.

With this background, the retort to Defendant's argument that this lost time is self-inflicted is obvious: How can Defendant recommend Plaintiff take certain actions but then pivot and claim Plaintiff taking those actions is unnecessary, unexpected, or an attempt to manufacture an injury? And, in another context, Defendant would surely argue she ***had a duty*** to take these actions in order to ***mitigate damages***. Defendant's arguments are paradoxical. Allegedly, Plaintiff has no heightened risk of future harm—so then why tell her to be watchful and get monitoring? And, if she takes Defendant's advice and spends time doing so, she's blamed for creating an injury that is, in turn, allegedly, non-compensable. This is untenable

## B. Plaintiff Adequately Alleges Each of her Causes of Action

### 1. *Plaintiff Adequately Alleges Negligence*

The Court should allow Plaintiff's Negligence claim to stand. A negligence claim under New Mexico law requires proof of four elements: "(1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) the breach of duty as cause of the injury." *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, 335 P.3d 1243, (N.M. 2014) 1249. First, Plaintiff alleges injuries sufficient to establish a claim for Negligence. Second, Plaintiff alleges causation sufficient to establish a claim for Negligence.

#### a. *Plaintiff Adequately Alleges a Concrete Injury*

Plaintiff alleges numerous facts establishing an injury. As discussed above, Representative Plaintiff and Class Members have suffered:

> (i) actual identity theft; (ii) the loss of the opportunity of how their PII and financial information is used; (iii) the compromise, publication, and/or theft of their PII and financial information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and financial information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (vi) the continued risk to their PII and financial information, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Representative Plaintiff's and Class Members' PII and financial information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and

> repair the impact of the PII and financial information compromised as a result of the Data Breach.

First Amended Complaint ¶ 95.

Any one of these suffice as an "injury." Plaintiff has adequately alleged Negligence.

Defendant claims that none of the alleged injuries rise to the level of a sustainable injury for New Mexico substantive law purposes. But New Mexico courts have expressly rejected Defendant's cramped understanding of an injury for purposes of negligence. In *Berlangieri v. Running Elk Corporation*, the New Mexico Supreme Court recognized that the policy rationales underpinning tort law "are applicable regardless of whether the victim suffers economic or physical injury." *Berlangieri v. Running Elk Corp.*, 134 N.M. 341, 348 (2003) ("tort law is more than injury law because it includes rules for wrongs that cause economic and emotional injury even when no physical harm of any kind has been done"). Under the *Berlangieri* Court's analysis, there was no reason to strictly limit the types of injuries for which a plaintiff can recover in negligence because "society's interests in deterring tortious conduct are not diminished or enhanced because of the type of harm." *Id* at 349.

While there is a dearth of New Mexico authority setting out what precisely constitutes an injury for purposes of a Negligence claim in the data breach context, the courts in other jurisdictions have found the types of injuries alleged here constitute a cognizable injury. *See e.g. In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-cv-2284-H-KSC, 2020 U.S. Dist. LEXIS 80736, at *11-12 (S.D. Cal. May 7, 2020) (holding economic loss rule did not bar a negligence claim in a data breach case where plaintiffs alleged lost time and increased anxiety because they were non-economic injuries). Given this, and the New Mexico Supreme Court's clear instruction regarding the need to broadly construe the types of injuries compensable under Negligence claims, a New Mexico court considering this issue would likely find Plaintiff has alleged an injury for purposes of her negligence claim.

*b. Plaintiff Adequately Alleges Causation*

Plaintiff has pled a proper injury in fact, and this injury is fairly traceable to the data breach incident. Plaintiff has pled that her Social Security number, full name, driver's license, and

financial account numbers have been stolen by cybercriminals. Following the data breach, Plaintiff's bank accounts were attacked twice before she disabled them. It can be plausibly inferred that Plaintiff's accounts would not have been accessed without the attacks, which is enough to sustain causation at the Motion to Dismiss stage.

In claiming there is no causation, Defendant claims that "Plaintiff does not allege that an unauthorized actor gained access to this specific bank account information through the security incident, let alone indicate any causal connection between the security incident and the unauthorized attempt, including whether information about the bank account at issue was even implicated in the breach." As such, Defendant claims that, like in *Blood*, there was no causal connection between the injury of a third-party accessing Plaintiff's bank account and the data breach. Motion, p. 12.

However, Plaintiff has alleged (and has pled) precisely that. Plaintiff claims "financial account numbers" were implicated in the attack. First Amended Complaint, ¶ 1. Plaintiff has experienced "several unauthorized attempts to access her bank account" to the extent that her *bank* recommended that she close the account and open a new one. First Amended Complaint, ¶ 98. It is an obvious inference—and requires no speculation—that these attempts may be related to the breach. In contrast, in *Blood*, no financial account numbers *whatsoever* were implicated in the attack, making the causal chain between the $500.00 charge and the data breach speculative. Thus, Plaintiff ***has*** met her burden of alleging facts that "indicate that Delta must exist, even to a small degree, on the causal chain leading to Plaintiff's alleged injuries," which is all that is required to survive a Motion to Dismiss. Motion, p. 13.

2. *Plaintiff Adequately Alleges Breach of Contract*

Plaintiff's Breach of Implied Contract claim is adequately pled and should stand. Defendant does not contest that the existence and terms of a contract can be manifested by conduct. Motion p. 18; *Armijo v. Affilion, LLC*, 854 F. App'x 236, 240 (10th Cir. 2021). Instead, Defendant argues that Plaintiff doesn't allege a contractual agreement. Motion p. 18. But Plaintiff's allegations could not be clearer. Defendant required Plaintiff to provide her information to

Defendant as a condition of her relationship with it (i.e., in this case her employment). First Amended Complaint ¶¶ 14, 17. Defendant assured reasonable security over that information. Complaint ¶ 47. Plaintiff provided this information to Defendant under the implied condition it would be kept secure. First Amended Complaint ¶ 17. She would not have entered into that relationship with Defendant if she had known it would not keep her information secure. First Amended Complaint ¶ 17. Indeed, it is commonsensical that she would not have provided such sensitive information to Defendant if it would not keep it secure. Thus, her decision to do so manifests an implied contract for Defendant to do so.

3. *Plaintiff Adequately Alleges Breach of the Implied Covenant of Good Faith and Fair Dealing*

Defendant argues that this claim fails because of the lack of an underlying contract. Motion p. 18-19. But, as explained above, there was a contract. Indeed, Defendant tacitly admits as much by acknowledging her status as a former employee. Motion p. 3. As such, this count is properly alleged and should stand.

4. *Plaintiff Adequately Alleges Unjust Enrichment*

To state a claim for unjust enrichment, a plaintiff must show "(1) another has been knowingly benefitted at one's expense; (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, P 11, 129 N.M. 200, 3 P.3d 695 (2000).

Defendant claims Plaintiff cannot state an Unjust Enrichment claim because she does not allege that Defendant did not pay her, and that Defendant, in fact, paid Plaintiff for her services. Motion, p. 19-20. But payment to Defendant is not the basis of Plaintiff's unjust enrichment claim. Instead, Plaintiff alleges that Defendant was unjustly enriched through its failure to disclose its lax data security practices at her expense because of her lost time, diminution in value of her PII, etc. By not disclosing these security practices at the date of her hire, Defendant was able to employ Plaintiff at less than what Plaintiff would have accepted if she had known about Defendant's practices. Defendant did not fairly compensate Plaintiff for her labor when the risk to her privacy

rights was properly taken into account. Defendant, in not disclosing its policies, knowingly benefited from Plaintiff's lack of knowledge of its practices. Since it would be unjust for Defendant to retain a benefit it obtained through this failure to disclose, a claim for Unjust Enrichment is an appropriate mechanism.

### C. In The Alternative, Amendment Is Warranted

Despite the low threshold for Standing, and an adequately pled 27-page pleading that ***far exceeds*** what's required, if any of the claims are deemed insufficient, they can be cured by amendment(s) to the pleadings. In fact, leave for such amendments is freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Conversely, leave to amend should be denied only upon showing of bad faith, undue delay, futility or prejudice. *Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962). Only if "the pleading ***could not possibly be cured*** by the allegation of other facts" should a Rule 12(b)(6) motion be granted without leave to amend. *Bellinghausen v. Tractor Supply Company*, 2013 WL 6057847, at *3 (N.D. Cal. 2013) (emphasis added).

Here, Defendant fails to demonstrate any bad faith or dilatory motive by Plaintiff, nor does it show that amendment would be futile or prejudicial. There has been no judicial evaluation of the pleadings before now and, thus, no reason to expect Plaintiff has exhausted her efforts to provide what would otherwise be "free discovery" to Defendant.

## V. CONCLUSION

For all the foregoing reasons, the Court should deny Defendant's Motion in its entirety. In the alternative, if the Court finds any claim insufficiently pleaded, Plaintiff respectfully requests leave to amend her pleadings accordingly.

Dated: February 10, 2023

**COLE & VAN NOTE**

By: ______________________________
Cody Bolce, Esq.
Attorney for Representative Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the electronic filing system, which will send notification of such filing to all counsel of record at their respective addresses as disclosed on the pleadings.

______________________________
Cody A. Bolce