IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**EVELINE MCCOMBS, individually, and**
on behalf of all others similarly situated,

    **Plaintiff,**

v.                                                           **Case No. 22-cv-00662-MLG-KK**

**DELTA GROUP ELECTRONICS, INC.**

    **Defendant.**

### REPLY IN SUPPORT OF DEFENDANT DELTA GROUP ELECTRONIC, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**I.**        **INTRODUCTION.**

Plaintiff's unsigned Opposition to Defendant's Motion to Dismiss ("Opposition") is telling for what it concedes—that the allegations in her complaint are simply insufficient to confer standing or support any cognizable claims for relief.

Having already amended her complaint once, Plaintiff's First Amended Complaint ("FAC") still fails to allege any facts demonstrating an injury in fact for purposes of Article III standing. Plaintiff contends that she has suffered a concrete injury based on vague allegations of purported attempts to access her bank account and spam calls, but she fails to substantively address any of Delta Group Electronic, Inc.'s ("Delta") arguments detailing the reasons and supporting authority for why such conclusory allegations are insufficient. Instead, Plaintiff cites to distinguishable authority, cases that actually support Delta's position, or otherwise makes arguments without citing to any authority at all.

Even if the Court were to find that Plaintiff has standing, Plaintiff has not sufficiently pled any of her common-law claims. Plaintiff's negligence claim fails for lack of damages and causation. The lone New Mexico authority Plaintiff cites, *Berlangieri v. Running Elk Corp.*, 2003-NMSC-024, 134 N.M. 341, 76 P.3d 1098, did ***not*** stand for the proposition that the damages

Plaintiff has articulated are sufficient to sustain a negligence claim. *Berlangieri* concerned the enforceability of an exculpatory clause in a release for recreational activities and included no discussion of the types of damages recoverable on a negligence claim. Regardless, New Mexico courts have consistently held that speculative and conclusory damages, like the laundry list of damages that Plaintiff asserts, are not cognizable as actual injuries to sustain a negligence claim. In addition to the lack of damages, Plaintiff also fails to satisfy the causation requirement for her negligence claim.

For her implied contract claim, Plaintiff offers absolutely no authority as to why her allegations—which, at best, demonstrate the mere exchange of information between an employee-employer and her subjective belief that such information would be protected from hackers—state a claim for breach of implied contract. There cannot be an implied contract without a "meeting of the minds," which requires, at a minimum, some form of representation, assurance, or conduct by Delta from which a contract can be implied.

Plaintiff's unjust enrichment claim is equally unavailing. She contends that Delta has been enriched because Delta employed Plaintiff at a lower wage than Plaintiff otherwise would have accepted had she known about Delta's security practices. But such facts are not even alleged in the FAC—and even if they were, this argument is illogical and based on hypotheticals. There is no "market" for which employers are offering higher or lower wages depending on the strength of their security measures. Delta employed Plaintiff as a Senior Buyer and Safety Officer and she was compensated for that position. Delta was not enriched by paying her the wage it was offering for the job.

Accordingly, Delta respectfully requests that this Court dismiss the FAC without leave to amend, as any further amendments would be futile.

## II.   PLAINTIFF LACKS ARTICLE III STANDING.

Plaintiff's standing argument largely focuses on the purported misuse of her data and lost time as sufficient to constitute an injury in fact. Notably, Plaintiff fails to address, and therefore concedes, Delta's arguments concerning her other alleged injuries, including the diminution in

value of her personal information, annoyance, inconvenience, and anxiety. *See Addams v. Applied Medico-Legal Sols. Risk Retention Grp., Inc.*, No. 21-cv-00952, 2022 WL 1170859, at *3 (D.N.M. Apr. 20, 2022) (when filing "an opposition to a dispositive motion and address[ing] only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (internal quotation marks omitted).

### A.     Plaintiff has not alleged an impending risk of identity theft through conclusory allegations concerning purported misuse.

Plaintiff contends that the most "obvious" injury she suffered is the "impending risk of identity theft and related harms Plaintiff faces in connection with the data breach." Opposition at 5. As support, she claims, "[g]iven the information here, which included full names, drivers' license numbers, financial account numbers, and Social Security numbers, Plaintiff surely faces (and has pled) embarrassment, lost time in investigating the breach, monitoring of her accounts, and a heightened risk of future harm for identity theft or other acts of fraud." *Id.* But just like the allegations in the FAC, this argument is conclusory—the mere disclosure of personal information is insufficient to find an injury in fact. *See C.C. v. Med-Data Inc.*, No. 21-cv-2301, 2022 WL 970862, at *4 (D. Kan. Mar. 31, 2022) ("[A] mere compromise of personal information, without more, fails to satisfy the injury-in-fact element in the absence of an identity theft.") (citing *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 621 (4th Cir. 2018)).

Plaintiff next contends that she has standing because the FAC contains allegations of actual misuse—that is, unauthorized attempts to access her bank account and spam calls. Opposition at 6. Without substantively addressing Delta's showing why those allegations are insufficient, Plaintiff merely contends that she is entitled to all reasonable inferences in her favor. *Id.* But this is precisely the problem. Plaintiff has not alleged enough facts to allow any inferences to be drawn. Her single sentence that she has experienced "unauthorized attempts" to access her bank account is conclusory, and Plaintiff fails to cite to a single case in which a court has found standing for similar allegations. To the contrary, these are exactly the threadbare allegations that courts have found insufficient for standing. *See, e.g.*, *Blood v. Labette Cnty. Med. Ctr.*, No. 22-cv-04036, 2022

WL 11745549, at *5-6 (D. Kan. Oct. 20, 2022) (dismissing claims for lack standing, due to insufficient traceability, despite conclusory allegations of $500 fraudulent bank account charge and issues with plaintiff's Social Security number when filing taxes).

Plaintiff cites the Ninth Circuit decision in *Krottner*, which concerned the physical theft of a laptop and specific allegations that the data therein had been used to open a bank account. *See Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1140-41 (9th Cir. 2010). Notably, *Krottner* was decided prior to the Supreme Court decision in *TransUnion LLC v. Ramirez*, which provides instructive guidance on the risk of future harm as an injury in fact. 141 S. Ct. 2190, 2210-11 (2021) ("TransUnion advances a persuasive argument that in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm."); *see also Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 993 (W.D. Okla. 2021) ("Given the holding in *TransUnion*, it is far from clear that any case finding a concrete injury based merely on an abstract risk of future identity theft following a data breach is still good law, at least with respect to a claim for damages."); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1193 n.3 (10th Cir. 2021) (citing *TransUnion* to "recognize the difficulties in bringing a claim for damages based on a theory of future risk of harm," in the context of standing).

Regardless, there is an important factual distinction between *Krottner* and this case. The *Krottner* plaintiff identified the actual information that was compromised and misused by alleging that someone used his Social Security number to open a bank account. *Krottner*, 628 F.3d at 1141. Plaintiff on the other hand, provides zero information concerning the purported "unauthorized attempts to access her bank account" and how such incident is even slightly related to the security incident at Delta. FAC ¶ 98.

Plaintiff also fails to address any of Delta's arguments regarding the lack of a concrete injury from an increase of spam communications. She ignores Delta's string of cases holding that spam is insufficient to confer standing, as well as the utter lack of any causal connection between the spam communications and the security incident. It is difficult to "infer" how the data breach

caused the spam communications when the compromised information did not even include Plaintiff's telephone number or email.

Moreover, Plaintiff fails to substantively address Delta's arguments concerning causation. To the extent that the Court interprets Plaintiff's causation arguments for negligence as also being applicable for standing, Delta incorporates all of its arguments in opposition, as further discussed below in Section II(A), *infra*.

### B. Plaintiff cannot create standing by spending time mitigating hypothetical injuries.

Next, Plaintiff claims that her purported injury of lost time mitigating the "potential" harm is sufficient to constitute an injury in fact. Opposition at 6. However, it is well established that standing cannot be manufactured through spending time on a hypothetical injury, like Plaintiff's. *See Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 402 (2013). Importantly, Plaintiff fails to demonstrate that her injury is not hypothetical.

The cases cited by Plaintiff only prove Delta's point. *Bass v. Facebook* concerned a data breach by hackers who "did not merely attack Facebook and loot it" but ran additional search inquiries "for the sole purpose of culling personal information from an additional 30 million people." 394 F. Supp. 3d 1024, 1034-35 (N.D. Cal. 2019). One plaintiff alleged that he was the target of "extensive 'phishing' emails and text messages" after his data was compromised, including his email address and telephone number, which caused him to spend up to an hour sorting through e-mails that he received following the data breach.[1] *Id.* Unlike here, the *Bass* plaintiff alleged specific facts concerning lost time spent mitigating an actual harm, a causal connection (as his email and telephone number was leaked), and demonstrated a risk of future identity theft in light of allegations detailing the hackers going "out of their way" to "run search queries on 69,000 hacked accounts" such that the goal was "not merely to attack" but "take personal information on

---

[1] Notably, the other plaintiff, Bass, was found not to have standing because he was not able to trace his purported injuries, including spam e-mails, to the data breach. The court found that "spam e-mails and fake friend requests simply occur to most, if not all, e-mail and social media users. They are too common and therefore cannot on their own establish causation here." *Bass*, 394 F. Supp. 3d at 1036.

a mass scale." *Id.*

Similarly, *Stasi v. Inmediata Health Grp. Corp.* concerned non-hypothetical injuries because the plaintiff's information was actually "posted on the Internet" and "searchable and findable by anyone with access to an internet search engine[.]" 501 F. Supp. 3d 898, 905 (S.D. Cal. 2020). This is in stark contrast to here, where, as Plaintiff admits, "[t]he fraudulent activity resulting from the Data Breach may not come to light for years." FAC ¶ 63.

Plaintiff cites *Pruchnicki v. Envision Healthcare Corp.* to support standing, but the defendant had conceded standing in the lower court, 439 F. Supp. 3d 1226, 1231 (D. Nev. 2020), so the Ninth Circuit did not focus on standing. Rather, it affirmed the dismissal of a complaint for failure to adequately state damages from a data breach to sustain a negligence claim. 845 F. App'x 613, 614 (9th Cir. 2021). The court found that allegations of lost time, emotional distress, risk of identity theft, and diminution in value of plaintiff's financial information were insufficient to support a claim for compensable damages. As explained in Section III, *infra*, Plaintiff's negligence claim suffers from the same fatal pitfall.

Without any authority to rely upon, Plaintiff next argues that she was "encouraged" by Delta to take action and that any resulting time spent heeding this advice thus constitutes an injury in fact. Opposition at 6. As Plaintiff notes, she has a duty to mitigate damages. But unless Plaintiff plausibly alleges she already has "damages incurred," through an actual, non-hypothetical injury, she has nothing to mitigate. Moreover, there is no authority for the notion that a defendant can somehow create standing for a plaintiff who was otherwise lacking standing by encouraging best practices. This is particularly true as New Mexico law ***requires*** directing recipients of data breach notices to review their personal account statements and credit reports. *See, e.g.*, Data Breach Notification Act, Notification; required content, NMSA 1978, § 57-12C-7 ("Notification . . . shall contain: . . . F. advice that directs the recipient to review personal account statements and credit reports, as applicable, to detect errors resulting from the security breach . . . ."). Surely the Legislature did not intend to provide every plaintiff with automatic injury by enacting NMSA 1978, § 57-12C-7.

In short, Plaintiff has not made a single persuasive argument to demonstrate that she has alleged a sufficient injury in fact to constitute standing. As such, the FAC should be dismissed in its entirety.

## III. PLAINTIFF'S FAC SHOULD BE DISMISSED FOR FAILURE TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In addition to not satisfying her burden on standing, Plaintiff has largely neglected to substantively respond to Delta's arguments concerning Plaintiff's failure to state a claim for negligence, breach of implied contract, and unjust enrichment. As such, all of Plaintiff's claims should be dismissed under Rule 12(b)(6).

### A. Plaintiff's negligence claim fails for lack of plausible damages and causation.

Plaintiff contends that she has alleged "numerous" injuries that she *and* class members have allegedly suffered by inserting a block quote from her FAC.[2] Opposition at 7. Rather than directly addressing Delta's arguments as to why each of these purported injuries are unrecoverable as damages for a negligence claim in a data breach setting, Plaintiff largely relies on *Berlangieri v. Running Elk Corp.*, 2003-NMSC-024, 134 N.M. 341, 76 P.3d 1098, a case that is wholly inapposite. *Berlangieri* concerned an exculpatory clause in a contract after a horse rider had been seriously injured. The case says nothing about the injury required to sustain a negligence claim from which to even remotely infer any kind of "clear instruction" from the New Mexico Supreme Court that Plaintiff's purported damages are recoverable. Rather, *Berlangieri* held that liability releases for personal injury may be enforced in limited circumstances, although finding the release at issue unenforceable on public policy grounds. *Id.* at ¶ 27.

Equally, Plaintiff's reliance on *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, ("*Solara*") No. 19-cv-2284, 2020 WL 2214152 (S.D. Cal. May 7, 2020) is unavailing. *Solara* involved a consolidated class action following a data breach where cyber

---

[2] Plaintiff cannot simply allege a laundry list of supposed injuries on behalf of unknown, unnamed putative class members—supported by no factual allegations and at the precertification stage—as legal conclusions to sustain her own claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

criminals gained access to health and personal information of tens of thousands of individuals. Several plaintiffs experienced subsequent issues concerning their data, including unauthorized changes to their health insurance and billing, increase in medical-related spam calls, unexplained credit inquiries, and spending time to address such issues. *Id.* at *1-3. Against this very different factual backdrop, the court found with little analysis that the plaintiffs had alleged a cognizable harm in the form of lost time and relied on two other cases, *Bass* and *Corona*, in holding that lost time is compensable. *Id.* at *4. Notably, *Bass* and *Corona*—unlike here—involved plaintiffs who articulated an actual harm in the form of further fraud and identity theft. *Bass*, 394 F. Supp. 3d at 1034-35 (finding "plaintiff Adkins has plausibly shown he is at risk of further fraud and identity theft" in light of "extensive 'phishing' emails and text messages" and details about hackers going out of their way to run search inquiries after attacking Facebook); *Corona v. Sony Pictures Entm't, Inc.*, No. 14-cv-09600, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) (finding that costs related to credit monitoring support a negligence claim only when reasonable and necessary and that plaintiffs sufficiently alleged a cognizable injury for credit monitoring where "records were posted on file-sharing websites and traded on torrent networks," "social security numbers were copied more than 1.1 million times throughout the 601 files stolen from Sony," and "hackers posted some of the PII with a message to Sony employees threatening to release even more of their PII").

Here, Plaintiff has ***not*** alleged any non-conclusory facts to show that there is a reasonably impending risk of future injury that required spending time to address. Courts have consistently dismissed negligence claims for failure to allege damages on allegations similar to those here. *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 2010 ME 93, ¶ 9, 4 A.3d 492, 496 ("The tort of negligence does not compensate individuals for the typical annoyances or inconveniences that are a part of everyday life."); *Krottner v. Starbucks*, 406 F. App'x 129, 131 (9th Cir. 2010) (dismissing negligence claim for lack of damages despite allegation of "attempt to open a bank account in [plaintiff's] name" because there was "no loss related to the attempt"); *see also In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 309, 318 (S.D.N.Y. 2018)

(analyzing New Mexico law to find that lost time damages must "limit[] recovery for lost-time damages to lost earnings or income"). Even *Pruchnicki*, *supra*, cited by Plaintiff, dismissed a complaint for failing to adequately allege damages where plaintiff alleged lost time, emotional distress, risk of future identity theft, and diminution in value of her personal and financial information—essentially what Plaintiff alleged here. 845 F. App'x 613, 614.

Plaintiff's argument for causation fares no better. To start, Plaintiff conflates the causation requirements of Article III standing with the negligence causation standard by contending that she has "pled a proper injury in fact, and this injury is clearly traceable to the data breach." Opposition at 8. Proximate cause is the required element of a negligence claim under New Mexico law, not traceability. *See Paez v. Burlington N. Santa Fe Ry.*, 2015-NMCA-112, ¶ 12, 362 P.3d 116, 122 ("Absent the element of proximate cause, a claim for negligence fails regardless of the presence of the remaining elements of the cause of action."). Regardless, she fails to meet both requirements.

Plaintiff seemingly argues that because she alleged that her bank account information was implicated in the security incident, she is entitled to the inference that any subsequent issues with *any* unauthorized attempts to access *any* bank account is the result of the data breach. But this is purely conclusory. Plaintiff attempts to artificially distinguish *Blood* (which concerned standing, not negligence) by arguing that the Bloods' bank account information was not compromised when they experienced a $500 unauthorized charge. But Plaintiff fails to address the primary reason that Delta cited *Blood,* which was its finding that bare and conclusory allegations are insufficient. For instance, the Bloods asserted threadbare allegations that they had "issues" with their Social Security number when they filed their taxes. Despite the fact that the Bloods' Social Security numbers were impacted in the data breach, the court held:

> This allegation is insufficient for several reasons. The Bloods do not specify how long the delay in their tax return was, what the problem was with the return, or how difficult it was to rectify. For example, did one short phone call clear it up? And they do not even allege whether they were expecting a refund that was delayed or whether they owed taxes and had (or had not) sent their payment. These details are the concrete and particularized types of facts that should support the Bloods' allegations. Without supporting facts, the bare allegations are conclusory. They fail

to meet their burden of alleging they suffered any actual, concrete harm from this event.

*See Blood v. Labette Cty. Med. Ctr.*, No. 22-cv-04036, 2022 WL 11745549, at *5 (D. Kan. Oct. 20, 2022). Moreover, the Bloods failed to sufficiently allege traceability for the $500 charge because "they do not plead any facts suggesting how the mere possession of their Social Security numbers and names would enable someone to make unauthorized charges on an existing account[.]" *Id.* This is *exactly* like Plaintiff's bald allegation of unauthorized attempts to access her bank account and receipt of spam calls, emails, and texts. Plaintiff provides *no* details concerning those alleged attempts and alleges *no* facts to show how her Social Security number, driver's license number, and financial account information would enable someone to also obtain her email and phone number to subject her to spam.[3] Such allegations are insufficient for both traceability for standing and causation for negligence.

Accordingly, Plaintiffs have not adequately alleged damages or causation to state a claim for negligence.

### B. **Plaintiff does not have a plausible breach of implied contract claim.**

Plaintiff claims that she has sufficiently alleged the existence of an implied contract by the mere act of providing information to Delta in the course of her employment and her claimed expectation that it would be kept secure. Opposition at 10. She offers no authority to suggest that the mere exchange of data with an employer and one party's unilateral understanding of how that data would be kept could give rise to a contract for data protection. *See, e.g.*, *Longenecker-Wells v. Benecard Servs. Inc*, 658 F. App'x 659, 662 (3d Cir. 2016) (no breach of implied contract claim where plaintiff merely alleges that employer required personal information as a prerequisite to employment, and such "requirement alone did not create a contractual promise to safeguard that information, especially from third party hackers").

To the contrary, there must be some express or implied representations or conduct by Delta

---

[3] Delta recognizes that the discussion on traceability may be more appropriately addressed as standing and not causation for negligence, but to enable the Court to better follow Delta's response to Plaintiff's arguments, Delta has placed its discussion here. Nonetheless, Delta also incorporates such arguments for standing.

that would imply a *mutual* understanding regarding the protection of Plaintiff's information. *Armijo v. Affilion, LLC*, 854 F. App'x 236, 240 (10th Cir. 2021) (finding no implied contract where "no factual allegations regarding formation or terms of the contract to be implied from the parties' conduct"). Plaintiff cites to paragraph 47 of the FAC to claim that "Defendant assured reasonable security over that information," but it merely states: "To purchase or otherwise receive its goods/services, Defendant required that Representative Plaintiff and Class Members provide it with, inter alia, their full names, addresses, and Social Security numbers." FAC ¶ 47. Because Plaintiff has not alleged anything that Delta said or did to enter into this purported contract, there is no implied contract that can be breached.

Moreover, Plaintiff failed to address Delta's argument that she has not adequately alleged damages, therefore conceding this argument. Accordingly, Plaintiff's claim for breach of implied contract fails for failure to allege an implied contract and damages.

### C. **Plaintiff did not plead a claim for breach of good faith and fair dealing.**

For the first time, Plaintiff discusses a purported claim for a breach of the covenant of "good faith and fair dealing." Opposition at 10. However, the FAC did not allege or reference such a claim. Delta need not respond to claims not in the FAC, but notes that as there is no implied contract as explained above, there is also no breach of good faith and fair dealing.[4]

### D. **Plaintiff's claim for unjust enrichment fails because Delta has not been enriched by a cyberattack on its computer systems.**

For the first time, Plaintiff claims that Delta "was unjustly enriched through its failure to disclose its lax data security practices" and because of this, "Defendant was able to employ Plaintiff at less than what Plaintiff would have accepted[.]" Opposition at 10. None of these claims was actually alleged in the FAC; nor could have it been inferred. Even had Plaintiff made such allegations, she still fails to adequately allege an unjust enrichment claim because the scenario

---

[4] Further, Plaintiff has not stated and would not meet the elements of a good faith and fair dealing claim under New Mexico law even if she had alleged it in her FAC. *See Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶ 13, 106 N.M. 726, 749 P.2d 1105 ("[W]e do not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship"); *Tyler Grp. Partners, LLC v. Madera*, 564 F. Supp. 3d 944, 1006 (D.N.M. 2021) (same, citing *Melnick*).

Plaintiff envisions is premised on speculation and hypotheticals. For instance, even if Delta disclosed its security practices and Plaintiff demanded a higher wage, there is no saying that Delta would have employed Plaintiff for the wage she demanded, as opposed to just hiring someone else who would take the job. Plaintiff's hypothetical fails to comport with the obvious realities of the job market, and she fails to allege any "price" associated with the additional protection of personal information for her job. In short, Delta was not unjustly enriched by compensating Plaintiff the wages it was offering for the position. *See, e.g.*, *In re Arthur J. Gallagher Data Breach Litig.*, No. 22-cv-0137, 2022 WL 4535092, at *10 (N.D. Ill. Sept. 28, 2022) ("If anything, the consolidated amended complaint suggests that third-party hackers, not Defendants, are the ones who benefitted from the Data Breach.").

### E. Plaintiff should not be allowed to amend her FAC again as it would be futile.

Plaintiff has already amended her Complaint once and should not be allowed leave to amend again because it would be futile. *See Burke v. New Mexico*, 696 F. App'x 325, 336 (10th Cir. 2017) (upholding a denial of leave to amend, because "[g]iving [plaintiff] another opportunity to recast her myriad allegations to support those claims would have been futile"). Delta has already met and conferred with Plaintiff on two separate occasions setting forth the bases for this motion to dismiss, which prompted the first amendment. *See* Dkt. No. 13. The Court should not give Plaintiff another bite at the apple.

### IV. CONCLUSION

In sum, Plaintiff's Opposition either concedes or fails to persuasively rebut any of Delta's arguments. Accordingly, Delta respectfully requests the Court to dismiss the FAC for lack of Article III standing or, in the alternative, for failure to state a claim, without leave to amend.

Respectfully submitted,

**MODRALL SPERLING ROEHL HARRIS & SISK, P.A.**

By: */s/ Kevin D. Pierce*
    Jennifer G. Anderson
    Kevin D. Pierce
    Post Office Box 2168
    Albuquerque, New Mexico 87103-2168
    Telephone: (505) 848-1800
    jga@modrall.com
    kdp@modrall.com

AND

**NORTON ROSE FULBRIGHT US LLP**
Judith A. Archer
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 318-3446
judith.archer@nortonrosefulbright.com

Eva Yang
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
eva.yang@nortonrosefulbright.com

*Attorneys for Defendant Delta Group Electronics*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 10th day of March, 2023, the foregoing was filed electronically through the CM/ECF system, causing all parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing.

**MODRALL SPERLING ROEHL HARRIS & SISK, P.A.**

By: */s/ Kevin D. Pierce*
    Kevin D. Pierce